## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MAURICE BERNARD STEWART, JR. | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-10-2926 |
| WARDEN, | * | |
| Defendants | * | |
| | *** | |

### MEMORANDUM

After receiving state prisoner Maurice Bernard Stewart Jr.'s civil rights complaint wherein he stated he was in danger and sought solely injunctive relief (ECF No. 1),  the court directed the Maryland Attorney General file a show cause response.  ECF No. 3.  The court noted counsel's response would constitute neither acceptance on behalf of any named defendants, nor waiver of any arguable defenses.  The Maryland Attorney General responded and plaintiff replied.  ECF Nos. 8 & 9.   The court directed the Maryland Attorney General to supplement their response to address plaintiff's overall allegation that he cannot safely be housed in any Maryland Division of Correction facility.  ECF No.  11.  Plaintiff was advised of his right to file a reply to defendant's response.  *Id.* The court is in receipt of the government's supplemental response and plaintiff's reply.[1]  ECF Nos. 12 and 13.

For the following reasons, the court finds emergency injunctive relief is unwarranted and emergency relief will be DENIED.  Stewart will be granted twenty-eight days to inform the court whether he wants to continue consideration of the claims in the complaint or withdraw this case.

---

[1] Also pending are plaintiff's motion for criminal investigation (ECF No. 14) which shall be denied and defendant's motion to withdraw as attorney Glenn Bell and enter the appearance of Rex Gordon (ECF No. 15) which shall be granted.

## I.       BACKGROUND

Stewart a self-represented inmate, initiated these proceedings by claiming that correctional employees have put gang members in his cell and encouraged these gang members to assault him. Plaintiff states that cellmates have gained information about his family by being housed with him and have made threats of harm against his family members. He states he feared for his safety and sought to be placed in a single cell, or on protective custody, or transferred out of the Maryland prison system.  Plaintiff alleges that there is a "hit" on his life by prison gangs and he cannot be safely housed. [2] ECF No. 1.

The uncontroverted evidence indicates plaintiff was transferred to WCI from the North Branch Correctional Institution ("NBCI") on March 24, 2010, due to two known enemies of plaintiff being housed at NBCI.  Plaintiff was placed on disciplinary segregation upon his arrival at WCI due to his having been found guilty on June 30, 2010 of using threatening language and disrespect to correctional staff.  ECF No. 8, Ex. 1.

On March 29, 2010, plaintiff wrote to the Warden claiming he was subject to a court order directing he be single celled and was to receive recreation alone.  The Warden forwarded the letter to the Housing Unit Manager, Lt. Friend, for response.   Friend investigated the matter and responded to the Warden indicating plaintiff was "appropriately housed."  A review of plaintiff's file revealed no court order for special housing or recreation alone.  *Id*.

On October 9, 2010, plaintiff's cellmate, inmate Chaka Franklin assaulted him.   Both inmates were separated, received medical treatment and listed on each other's enemies list.  Plaintiff

---

[2] Plaintiff details an assault upon him by Chaka Franklin a "known gang member and hit man" who repeatedly threatened him.  Plaintiff states that despite his advising correctional staff of the situation, they ignored the problem.  He claims that on October 9, 2010,  Franklin stabbed him, tied him under the bottom bunk, and sexually assaulted him. ECF Nos. 1 & 4.   Plaintiff states that after the assault he was transferred to the North Branch Correctional Institution. He indicates he cannot be safely housed there because he has numerous enemies who are conspiring to kill him while he is transported through the prison for various appointments.  In particular he claims he is at risk of harm from "inmate workers" who he sees during transport and  who prepare his food. *Id*.

was transferred to NBCI, away from Franklin, on October 13, 2010.  During the investigation of the incident, plaintiff provided a statement indicating that on the date of the incident Franklin had repeatedly threatened him, saying he was going to kill him.  Franklin told Officers Davis and Logsdon that he was going to kill plaintiff.  Plaintiff claims the officers told Franklin in response, to "jump on [him] and harm [him].  *Id.*

Davis and Logsdon aver that at no time did Franklin state to them he was going to kill plaintiff.  ECF No. 8, Ex. 2.   Friend avers that he conducted an investigation into plaintiff's claims regarding single cell status and recreation.  He reviewed plaintiff's base file, observed plaintiff's demeanor on the wing, interviewed plaintiff,  and covertly monitored his interactions and conversations with other inmates.  Friend concluded that there was no evidence to support plaintiff's stated need for special consideration in his housing.  Plaintiff's complaints to Friend concerned his discontent with staff rather than fear of other inmates.  Based on Friend's observations he found plaintiff to be an instigator on the tier who had a strong following among the Muslim community housed in the segregation unit.  On several occasions, plaintiff incited other inmates to protest in support of his non-compliant behavior when he felt his rights were being violated.  It is Friend's belief that plaintiff attempted to control his housing and dictate to Friend that he be housed only with a "Muslim brother." [3] *Id.*

Friend further declares that there was no indication that plaintiff and Franklin should not be housed together prior to the incident on October 9, 2010.  The two were housed together for approximately 19 days prior to the assault.[4]  Friend further avers that the assault by Franklin on plaintiff was unrelated to any gang activity.  *Id.*

---

[3] Plaintiff takes issue with Friend's investigation, indicating that it cannot be true he had a strong following amongst Muslim inmates or sought to be housed with a Muslim inmate since he does not practice Islam.  ECF No. 9.

[4] Plaintiff opines that the assault did not occur earlier because Franklin could not obtain the weapon sooner.  ECF No. 9.

In his reply, plaintiff states that in January, 2009, while housed at NBCI, his brother contacted the prison to advise that gang members had come to his home and threatened he and his family, claiming that they were enemies of plaintiff's.  Plaintiff states that as a result of his brother's call he was interviewed by Lt. Thomas and Captain Boher.  Plaintiff states no corrective action was taken to protect his family.  ECF No. 9.

In further support of his claim that a "hit" has been placed on him, plaintiff states that on April 13, 2009, he was assaulted by a member of the "bloods," Donte Ross.  Plaintiff notes that defendants maintained the assault was not gang related and was a mutual fight between plaintiff and Ross.

Plaintiff further alleges he was assaulted on two occasions by correctional staff at NBCI.  He claims staff were conspiring with inmate workers and furnished the inmates with knives so they could ambush plaintiff while he was being escorted through the prison. He specifies that transportation officers have conspired with inmates to kill him.  *Id*.

When he was transferred from NBCI to WCI on March, 2010,  plaintiff met with Case Manager Bittinger and advised Bittinger that gang members had put out a hit on his life and all gang members were trying to carry out the hit.  Upon his transfer to WCI, plaintiff claims he he told the property officer he had documentation regarding his gang problem and single cell status, but was not permitted to retrieve same. He states that four days after he arrived at WCI he wrote to the Warden advising him of his gang problem.  Plaintiff believes that had Lt. Friend properly investigated the matter he would have contacted the Attorney General's office and ascertained that he had filed other civil rights cases regarding his gang problem.

Plaintiff indicates that on an unspecified date he was interviewed by Sgt. McAlpine from the DOC Internal Investigation Unit.  McAlpine investigated the alleged threats made against plaintiff's

family.  Plaintiff states after he was interviewed by McAlpine,  Lt. Friend "kept putting a steady flow of BGF gang members in [his] cell."  ECF. No. 9.

In their supplemental response to the order to show cause, defendant indicates that Lieutenant Damon Thomas is NBCI's Intelligence Officer, who knows plaintiff personally, having interviewed him several times during his incarceration at NBCI.[5]  Thomas avers that he has not spoken with plaintiff in over a year as plaintiff has not requested to see him and has in fact refused his last effort to interview him. ECF No. 12, Ex. A.

As Intelligence Officer at NBCI, Thomas maintains frequent contact with informants regarding activities of prison gangs including the BGF.  Thomas avers that he typically speaks with BGF informants on a daily basis.  The informants are gang members who are knowledgeable of the gang's activities and have a history of providing accurate information.  Frequently, Thomas is advised by the informants of the gang's intention to harm an inmate, allowing Thomas to arrange for enhanced security for the targeted inmate. Thomas avers that plaintiff's name has never been mentioned by an informant as a target for a hit.  Nor is he aware of any indication that plaintiff is in danger of assault at the hands of any known enemy whether gang affiliated or not.  *Id.*  When plaintiff was first interviewed by Thomas, he advised Thomas that there were "hits" placed on him by prison gangs.  Plaintiff was unable to identify the name of any person he considered a threat or name the identity of the particular gang or gangs he believed had placed a hit on him.[6]  Moreover, plaintiff could provide no reason he would be targeted by any gang.  *Id.*  Based on his experience,

---

[5] Plaintiff takes issue with the characterization of "knowing him personally" and states he only spoke with Lt. Thomas twice. ECF No. 13.  He felt Lt. Thomas was playing a game with him and his family and therefore discontinued all contact with him.  *Id.*

[6] Plaintiff claims he listed all of the names now included on his enemy list when interviewed by Lt. Thomas.  ECF No. 13.  He also states that it is incorrect that he could not provide a reason the hit was placed on him—he indicates that he got into an argument with a gang leader named "Scooby" who wanted plaintiff to join an unspecified gang.  When plaintiff refused, "Scooby" put out a $50,000 hit on plaintiff.  *Id.*

Thomas believes plaintiff's claim of a gang hit has been made in an effort to manipulate housing. *Id.*

Plaintiff is presently housed on disciplinary segregation at NBCI. Lt. Harbaugh manages the Housing Unit and avers that since being so assigned (for over two years) plaintiff has not been assaulted or harmed by another inmate. Plaintiff is assigned to a single cell and, if he chooses, is permitted to take recreation alone. Plaintiff is isolated from NBCI's general population as well as the other inmates housed in Housing Unit 1. Plaintiff is escorted by correctional staff whenever his needs require he leave Housing Unit 1. Harbaugh avers that plaintiff's sole contact with other inmates is during the feed-up process when an inmate, flanked by two correctional officers, slips a tray of food through the slot in the cell door. *Id.* When plaintiff is released from disciplinary segregation, orders indicate he will continue on single cell status and be permitted to recreate alone. *Id.*

## II.    STANDARD OF REVIEW

A preliminary injunction is an extraordinary and drastic remedy, s*ee Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), requiring a movant to demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

After considering Stewart's claims and counsel's response, the court concludes that Stewart fails to show that he is likely to suffer irreparable harm without emergency injunctive relief. The

assaults plaintiff suffered at the hands of other inmates were addressed promptly by staff after the circumstances were uncovered.  Plaintiff's assailants were placed on an enemies list so that his exposure to those individuals could be avoided in the future. Defendant has uncovered no evidence to show that plaintiff is the target of a gang hit or that correctional staff is conspiring with inmates to harm him.  Plaintiff's failure to make a clear showing of irreparable harm is, by itself, a ground upon which to deny injunctive relief.  *See Direx Israel, Ltd. v. Breakthrough Medical Corporation*, 952 F.2d 802, 812 (4th Cir. 1992.)  The irreparable harm must be "neither remote nor speculative, but actual and imminent."  *Tucker Anthony Realty Corp v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989); *see also Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983).  Plaintiff has failed to show irreparable harm; he is housed in a single cell, permitted recreation alone, and is accompanied by correctional staff when travelling outside of his cell.  All efforts have been taken to insure his safety.  Under these circumstances the court finds injunctive relief is not warranted.

## III.    CONCLUSION

Absent demonstration by Stewart that emergency injunctive relief is warranted, the court will deny his request for relief by separate order and grant him twenty-eight days to state whether he wants to proceed on his claims.  He may also provide supplemental information in support of his claims within this time period.  A separate order follows.

__ January 17, 2012 _____             /s/_____

Date                                                  J. Frederick Motz

                                                  United States District Judge