# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MAURICE BERNARD STEWART, JR.    *

Plaintiff                       *

v                               *          Civil Action No. JFM-10-2926

WARDEN, et al.,                 *

Defendants                      *
                              ***

## MEMORANDUM

Pending is a motion to dismiss, or in the alternative, for summary judgment filed on behalf of defendants Warden J. Philip Morgan, former Assistant Warden Harry Murphy, Warden Frank B. Bishop, Jr., Chief of Security Michael P. Thomas, Case Manager John White, Case Manager Douglas H. DeVore, Lieutenant Jason Harbaugh, and Officer Phillip D. Tasker. ECF No. 33. Plaintiff has filed a response. ECF No. 36, & 38.[1] Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the motion to dismiss, construed as a motion for summary judgment, will be GRANTED.[2]

---

[1] In his response to the dispositive motion and in correspondence to the court, plaintiff for the first time raises new detailed allegations concerning an alleged conspiracy by correctional officers, who are not named as defendants in this case, and which include allegations that they solicited other inmates to harm him and states that he was assaulted on January 18, 2013, by another inmate. ECF Nos. 36 & 37. He further indicates that during his transport to the hospital he slipped in the transport van injuring his back. ECF No. 37. These claims are not properly before the court as they have not been raised by way of an amended complaint, defendants are not on notice as to these detailed allegations, and most importantly the correctional officers alleged to have solicited the other inmates have not been named, much less served with process in this case. Plaintiff is free to file a new civil rights complaint concerning these claims if he believes his rights were violated.

[2] Plaintiff also sought injunctive relief. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial than the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7,  20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292-93 (4th Cir. 2011).  Plaintiff's request for injunctive relief shall be denied, as he cannot clearly establish that he would suffer immediate and irreparable injury, loss, or damage if the requested relief is not granted.

### I.      BACKGROUND

Stewart a self-represented inmate, housed at the Western Correctional Institution ("WCI"), initiated these proceedings by claiming that correctional employees have put gang members in his cell and encouraged these gang members to assault him.  Plaintiff states that cellmates have gained information about his family by being housed with him and have threatened to harm his family members. He states he feared for his safety and sought to be placed in a single cell or on protective custody, or transferred out of the Maryland prison system.  Plaintiff alleges that there is a "hit" on his life by prison gangs and he cannot be safely housed in Maryland.[3]  ECF No. 1.  Plaintiff's initial request for injunctive relief was denied.  ECF No. 17.  Plaintiff filed court-directed supplements to his complaint. ECF Nos. 18 & 20.

The uncontroverted evidence indicates plaintiff was transferred to WCI from the North Branch Correctional Institution ("NBCI") on March 24, 2010, because two known enemies were housed at NBCI.  Plaintiff was placed on disciplinary segregation upon his arrival at WCI because on June 30, 2010, he was found guilty of using threatening language and showing disrespect to correctional staff.  ECF No. 8, Ex. 1; ECF No. 33, Ex. A.

On March 29, 2010, plaintiff wrote to the Warden claiming he was subject to a court order directing he be single celled and was to receive recreation alone.  The Warden forwarded the letter to the Housing Unit Manager, Lt. Friend, for response.   Friend investigated the matter and

---

[3] Plaintiff details an assault upon him by Chaka Franklin, a "known gang member and hit man" who repeatedly threatened him.  Plaintiff states that despite his advising correctional staff of the situation, they ignored the problem.  He claims that on October 9, 2010,  Franklin stabbed him, tied him under the bottom bunk, and sexually assaulted him.  ECF Nos. 1 & 4.   Plaintiff states that after the assault he was transferred to the NBCI.  He indicates he cannot safely be housed at NBCI because he has numerous enemies who are conspiring to kill him while he is transported for various appointments.  In particular he claims he is at risk of harm from "inmate workers" who he sees during transport and who prepare his food.  *Id.*

responded to the Warden indicating plaintiff  was "appropriately housed."  A review of plaintiff's file revealed no court order for special housing or recreation alone.  *Id*.

On October 9, 2010, plaintiff's cellmate, Chaka Franklin assaulted him.  Both inmates were separated, received medical treatment and were placed on each other's enemies list.  Plaintiff was transferred to NBCI, away from Franklin, on October 13, 2010.   During the investigation of the incident, plaintiff provided a statement indicating that on the date of the incident Franklin had repeatedly threatened him, saying he was going to kill him. Plaintiff states that Franklin told Officers Davis and Logsdon that he was going to kill plaintiff, and claims the officers responded by telling Franklin to "jump on [him] and harm [him].  *Id*.

Davis and Logsdon aver that at no time did Franklin state to them he was going to kill plaintiff.  ECF No. 8, Ex. 2; ECF No. 33, Ex. B.    Friend avers that he conducted an investigation into plaintiff's claims regarding single cell status and recreation.  He reviewed plaintiff's base file, observed  plaintiff's demeanor on the wing, interviewed plaintiff,  and covertly monitored his interactions and conversations with other inmates.  Friend concluded that there was no evidence to support plaintiff's stated need for special consideration in regard to his being housed on disciplinary segregation.  Plaintiff's complaints to Friend concerned his discontent with staff rather than fear of other inmates.  Based on Friend's observations he found plaintiff to be an instigator on the tier who had a strong following among the Muslim community housed in the segregation unit.  On several occasions, plaintiff incited other inmates to protest in support of his non-compliant behavior when he felt his rights were being violated.  It is Friend's belief that plaintiff attempted to control his housing and dictate to Friend that he be housed only with a "Muslim brother." [4] ECF No. 33, Ex. D.

Friend further declares that there was no indication that plaintiff and Franklin should not be

---

[4] Plaintiff takes issue with Friend's investigation, indicating that it cannot be true he had a strong following amongst Muslim inmates or sought to be housed with a Muslim inmate since he does not practice Islam.  ECF No. 9.

housed together prior to the incident on October 9, 2010.   The two were housed together for approximately 19 days prior to the assault.[5]  Friend further avers that the assault by Franklin on plaintiff was unrelated to any gang activity.  *Id.*

Plaintiff states that when he was transferred from NBCI to WCI in March of  2010, he advised Case Manager Bittinger that gang members had put a hit on his life and all gang members were trying to carry out the hit.   Upon his transfer to WCI, plaintiff claims he he told the property officer he had documentation regarding his gang problem and single cell status, but was not permitted to retrieve same. He states that four days after he arrived at WCI he wrote to the Warden advising him of his gang problem.   Plaintiff believes that had Lt. Friend properly investigated the matter he would have contacted the Attorney General's office and ascertained that he had filed other civil rights cases regarding his gang problem.   Plaintiff has further indicated that on an unspecified date he was interviewed by Sgt. McAlpine from the DOC Internal Investigation Unit concerning the alleged threats made against plaintiff's family.   Plaintiff states after he was interviewed by McAlpine,  Lt. Friend "kept putting a steady flow of BGF gang members in [his] cell."  ECF. No. 9.

Plaintiff states that on January 13, 2012, defendant White, case manager at NBCI, had plaintiff transferred back to WCI.  Plaintiff maintains that he is a "target" of  WCI correctional officers and inmate gang members. ECF No. 20.   White, declares that plaintiff was transferred to WCI in order to enhance his safety.  ECF. No. 33, Ex. E & F.   Plaintiff had three known enemies at NBCI and his only documented enemy at WCI was transferred to NBCI at the same time plaintiff was sent to WCI. Upon transfer to WCI, plaintiff was housed on administrative segregation.  *Id.* White had no information that plaintiff's safety would be at risk at WCI.  *Id.*

---

[5] Plaintiff opines that the assault did not occur earlier because Franklin could not obtain the weapon sooner.  ECF No. 9.

Upon transfer to WCI, plaintiff's OBSCIS Enemy Alert screen was reviewed and it was determined they were no known enemies.  ECF No. 33, Ex. F.  On February 29, 2012, plaintiff states that his cellmate, Shawn DeCorcey, refused to go back into the cell with plaintiff.  Plaintiff states that defendant Tasker should have notified a supervisor and had DeCorcey escorted to disciplinary segregation when Tasker forced DeCorcey back into the cell with plaintiff,  DeCorcey assaulted him.  ECF No. 20.  Tasker responded spraying mace into the cell to break up the fight, and wrote an infraction against both inmates for fighting.  Plaintiff states that Tasker deliberately put DeCorcey back into the cell with plaintiff to instigate a confrontation.

Tasker avers that on the date of the incident DeCorcey refused to come out of the cell for his shower and this was unusual for him.  ECF No. 33, Ex. G.   Tasker avers that he asked plaintiff whether everything was okay between he and DeCorsey and if it was not that he needed to let him know.  Tasker avers that plaintiff said everything was "wonderful" and there was no problem.  *Id*. After an officer escorted plaintiff back from the shower, Tasker heard a commotion and found plaintiff and DeCorsey fighting.  *Id*.   While DeCorsey has provided an affidavit indicating he is a member of BGF (ECF No. 27), he was not validated as a gang member at the time of the assault. ECF No. 33, Ex. F.  Defendants note that plaintiff and DeCorsey had lived peacefully for 49 days prior to the incident.  They further note that neither inmate required medical treatment for any injury, apart from pepper spray exposure, as a result of the incident.  ECF No. 33, Ex. F. Plaintiff claims that he was injured in the assault but defendants failed to document same.  ECF No. 26. Tasker avers that he had no warning or knowledge that plaintiff was in any danger from his cellmate. ECF No. 33, Ex. F.

Plaintiff states that since his transfer to WCI he has been harassed by staff and threatened by gang members.  He states that he has been threatened by members of the Black Guerilla Family

(BGF) that they have a "hit" on him.   ECF No. 20.   Plaintiff's allegation of a "hit" being placed on him has been investigated by Intelligence Officers at NBCI and WCI and no evidence has been found to support this contention.   Damon Thomas, NBCI's Intelligence Officer, knows plaintiff personally, having interviewed him several times during his incarceration at NBCI.[6]   Thomas avers that he has not spoken with plaintiff on over a year as plaintiff has not requested to see him and has in fact refused his last effort to interview him. ECF No. 12, Ex. A.

As Intelligence Officer at NBCI, Thomas maintains frequent contact with informants regarding activities of prison gangs including the BGF.   Thomas avers that he typically speaks with BGF informants on a daily basis.   The informants are gang members who are knowledgeable of the gang's activities and have a history of providing accurate information.   Frequently, Thomas is advised by the informants of the gang's intention to harm an inmate, allowing Thomas to arrange for enhanced security for the targeted inmate. Thomas avers that plaintiff's name has never been mentioned by an informant as a target for a hit, nor is he aware of any indication that plaintiff is in danger of assault at the hands of any known enemy whether gang affiliated or not. ECF No. 33, Ex. H.   When plaintiff was first interviewed by Thomas he advised Thomas that there were "hits" placed on him by prison gangs.   Plaintiff was unable to identify the name of any person he considered a threat or name the identity of the particular gang or gangs he believed had placed a hit on him.[7]   Moreover, plaintiff could provide no reason he would be targeted by any gang.   *Id*.   Based on his experience, Thomas believes plaintiff's claim of a gang hit has been made in an effort to manipulate housing.     *Id*.

---

[6] Plaintiff takes issue with the characterization of "knowing him personally" and states he only spoke with Lt. Thomas twice. ECF No. 13.  He felt Lt. Thomas was playing a game with him and his family and therefore discontinued all contact with him.  *Id*.

[7] Plaintiff claims he listed all of the names now included on his enemy list when interviewed by Lt. Thomas.  ECF No. 13.  He also states that it is incorrect that he could not provide a reason the hit was placed on him—and indicates that he got into an argument with a gang leader named "Scooby" who wanted plaintiff to join an unspecified gang.  When plaintiff refused, "Scooby" put out a $50,000 hit on plaintiff.  *Id*.

WCI's Intelligence Office also investigated plaintiff's claim and found no evidence to support plaintiff's contention that a "hit" had been placed on him by any gang.  *Id*., Ex. I. While housed on segregation at WCI, plaintiff only comes into contact with his assigned cellmate, even during recreation.  Plaintiff has no contact with the general population.  *Id*., Ex. F.

Plaintiff states that he spoke with defendant Devore, case manager at WCI who advised that he was trying to work on a solution but  "gang members are everywhere" and there is no solution to the problem.  ECF No. 20.  Devore avers that he did not tell plaintiff that gang members are everywhere and that he did not have a genuine solution to the gang "hit" issue.  ECF No. 33, Ex. J. Rather, Devore advised plaintiff that he would be housed on administrative segregation while his claim regarding a gang "hit" was investigated.  *Id*.   The claim was investigated and no evidence of a "hit" was found.  ECF No. 33, Ex. I.

Plaintiff states that he suffers from glaucoma, his eye sight fades in and out, and he cannot see to function in a cell.  He states that he should be housed in a medical cell with safety railings in order to accommodate his reduced vision.  He also states that his reduced vision makes him a target for other inmates  ECF No. 20. Defendants state that plaintiff does not meet the requirement for single cell housing nor is there a medical order requiring a special cell due to plaintiff's poor eyesight.[8]  ECF No. 33, Ex. F.

Defendants further note that since arriving at WCI on January 11, 2012, plaintiff did not submit any requests for administrative remedy (ARPS) concerning the matters alleged in his supplemental complaint.  *Id*., Ex. F.

### Standard of Review

---

[8] Plaintiff further states that defendants Harbaugh and Thomas filed affidavits in this case that plaintiff would be housed in a single cell and receive recreation alone status but accused them of lying.  Plaintiff states that he has been housed in a double cell and receives recreation with gang members.[8]  *Id*.  Defendants clarify that plaintiff was housed on disciplinary segregation in a single cell at NBCI[8] but that on January 11, 2012, he was transferred to WCI.  *Id*.

A.      Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).   The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.  *Id.* at 562.  The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id.* 570.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

B.    Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon

the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to

confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Analysis

A.      Failure to Protect

The gravamen of plaintiff's complaint is that his right to be free from cruel and unusual punishment has been violated due to prison officials' failure to protect him from assault by other prisoners.   The Eighth Amendment does recognize this right.   *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).   As noted by the Supreme Court  in *Farmer v. Brennan*, 511 U.S. 825, 833 (1994),

> Prison officials have a duty . . .  to protect prisoners from violence at the hands of other prisoners.   Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency.   Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

In a failure to protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference.  *Id*. at 834.

Deliberate indifference in the context of a failure to protect claim means that defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer***,** 511 U.S. at 837.   Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy.  *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact

that an inmate sought and was denied protective custody is not dispositive of the fact  that prison officials were therefore deliberately indifferent to his safety.").

As noted, a prison official is deliberately indifferent when he possesses actual, subjective knowledge of an excessive risk of harm to the prisoner's safety and disregards it. *Farmer*, 511 U.S. at 837-39.   There is simply no evidence before the court that defendants were deliberately indifferent to plaintiff's safety.   To the contrary, defendants have acted to investigate plaintiff's claims regarding his alleged problems with prison gangs.   The claims were investigated at NBCI and WCI and found to be baseless.   Moreover, there was no advanced warning that plaintiff would be attacked by either of his cellmates, Franklin or DeCorcey, and neither of plaintiff's aggressors, contrary to his claims,   was a validated gang member. The record further demonstrates that defendants have acted to insure that plaintiff is housed in facilities without known enemies and on units where his contact with other inmates is severely limited.  Plaintiff, as the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could  reasonably find in his favor.  Plaintiff has  failed to submit evidence to support his claim, or to put the material fact of this case--the failure to protect--in dispute. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991).

B.     Medical Cell

To the extent plaintiff claims he has been denied adequate medical care in that he has not been assigned to a special medical cell, his claim fails. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297

(1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition.  *See Farmer*, 511 U.S. at 839–40.   "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability  "if [he] responded reasonably to the risk, even if the harm was not ultimately averted.  *See Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *Brown v. Harris*,  240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

13

There is no evidence that a medical order has been entered directing plaintiff be assigned to a special cell due to a physical disability.  Absent such an order there is no claim that defendants acted improperly in failing to so assign plaintiff.  There is no indication that defendants interfered with plaintiff's use of the sick call process or interfered with the provision of medical care.

C.     Supervisory Liability

The doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be  "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates'" misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Bayard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984).  Supervisory liability under §1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).  Plaintiff has pointed to no action or inaction on the part of defendants former Warden Morgan, former Assistant Warden Murphy, Warden Bishop and Security Chief Thomas that resulted in a constitutional injury.  His claims against them shall be dismissed.

For the aforementioned reasons, defendants' Motion, construed as a motion for summary judgment, shall be granted.   A separate Order follows.

14

Date: March 13, 2013                    _____/s/_____
                                        J. Frederick Motz
                                        United States District Judge